UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM J. PETERSON and
PATRICIA PETERSON,

       Plaintiffs,

                                                             Case No. 1:15-cv-671

v.

                                                              HON. ROBERT HOLMES BELL

CITY OF GRAND RAPIDS et al.,

       Defendants.
_____/

## **O P I N I O N**

Plaintiffs William J. Peterson and Patricia Peterson reside at 639 Cherry St., Grand Rapids, Michigan. Plaintiffs operated a "small scale recycling business" at their home, which caused tension with City of Grand Rapids (the "City") officials—particularly Eric Jordan and Carolyn Forsythe—who were responsible for enforcing the City's Zoning Code. Mr. Peterson wanted to continue operating his business on his property even though the Zoning Code prohibited him from doing so. He states that there is "no property [in the City] available to persons conducting recycling sorting operations like the plaintiffs'[.]" (2d Am. Compl. ¶ 7, 8, ECF No. 13.) The City "refused or failed to act on requests to change zoning to provide for small scale recycling," despite City officials' knowledge that "the Code needed to be changed." (*Id.* ¶ 8, 9.)

In the spring of 2012, William Peterson had several discussions with Jordan and Forsythe about his recycling operation. He noted their "refusal to particularize their objections" to the recycling operation in writing, and their failure to inform him what "constituted compliance" with the Zoning Code. (*Id.* ¶ 9.) Eventually, as a result of Plaintiffs' recycling operation, the City issued a housing violation ticket. (*Id.* ¶ 15.) Plaintiffs state that the ticket was appealed to the Board of Housing Appeals, and a hearing was set for July 2012. (*Id.*)

Prior to the scheduled hearing, Defendants Jordan and Forsythe filed an affidavit to obtain a search warrant at Plaintiffs' residence. The warrant was obtained to "verify the existence of alleged circumstances jeopardizing the public health and safety, being City Housing and Nuisance Code violations, as determined necessary by the City Manager of the City of Grand Rapids, and to abate the conditions." (Aff. for Search Warrant, ECF No. 15-5, PageID.154.) Defendants sought "[t]o enter the property with the City contractor, Pit Crew, GRPD, to remove all discarded debris/materials, garbage, rubbish, auto parts, appliances/furniture, all unlicensed and/or inoperable vehicles from the property." (*Id.*)

The warrant was executed on June 28, 2012, when "a large number of armed police officers confronted and restrained plaintiffs . . . at their home" and "prevented them from protecting their property from collection in trucks and removal by Defendant City and its contractor, Pit Crew Company." (2d Am. Compl. ¶ 23.) Plaintiffs state that they "had no notice of the raid nor an opportunity to be heard." (*Id.* ¶ 24.) The property removed from

Plaintiffs' residence included a Ford truck, valuable scrap metal, and a set of drawers containing tools and other valuable property. Plaintiffs state that some of the property that was seized was taken to the dump, while some of it was sold by Defendants, whom Plaintiffs believe converted the materials for personal use. (*Id.* ¶ 32.)

As a result of these actions, Plaintiffs have raised several claims against the City of Grand Rapids, Eric Jordan, Carolyn Forsythe, and Shelly Weiss (collectively, the "City Employees"), Pit Crew Company ("Pit Crew"), and Pit Crew's owner, John Morton. The matter is before the Court on Defendants City of Grand Rapids and City Employees' motion to dismiss. Defendants move to dismiss some of Plaintiffs' claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure, and others under Rule 12(b)(6).

## I. Rule 12(b)(1)

Defendants argue that the Court lacks jurisdiction to hear Plaintiffs' claims raised under the Fifth Amendment's Takings Clause because Plaintiffs have failed to pursue a remedy in state court, and that the Court lacks jurisdiction over Plaintiffs' exclusionary zoning claims because Plaintiffs have not sought rezoning or applied for a land use variance. (Mot. to Dismiss 6-10, ECF No. 15.) Defendants argue that dismissal of these claims is proper under Federal Rule of Civil Procedure 12(b)(1), which allows a party to assert the defense of lack of subject-matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1).

Importantly, Defendants make this argument based on "the facts at hand," and not on the sufficiency of the Complaint. (Mot. to Dismiss 4.) There is a "'crucial distinction, often

overlooked between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings.'" *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)).

> The factual attack . . . differs greatly for here the trial court may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. Pro. 56. Because at issue in a factual attack is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* (collecting cases). When reviewing a factual attack, "a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

**A. Exclusionary Zoning Claims**

Defendants first move to dismiss Plaintiffs' claim of exclusionary zoning brought under the Michigan Zoning Enabling Act, which alleges that the City:

> [F]ailed and refused despite repeated requests by Plaintiff Peterson and others to accommodate small scale recyclers under its zoning ordinances which resulted in an illegal and unconstitutional deprivation of his right to make a living in the city. This failure violated the Michigan Zoning Enabling Act, MCL 125.3207 . . . The City's Zoning Code under Section 5.9.16 provided only for recycling sorting operations only on 2 acre lots in the Industrial

4

> Transportation Zone with other restrictions which had the effect of totally prohibiting such a use. Section 5.9.24 for recycling collection stations, likewise, totally prohibited such a use. There is a demonstrated need for recycling collection sorters like Plaintiff . . . Despite this demonstrated need, the City deprived Plaintiff of due process of law by refusing to accommodate his recycling activity in its zoning code."

(2d Am. Compl. ¶¶ 57, 58.)

In *Hendee v. Putnam Township*, 786 N.W.2d 521 (Mich. 2010), a similar claim was raised. There, the plaintiffs filed a complaint alleging, *inter alia*, that the township "wrongfully engaged in exclusionary zoning by enacting an ordinance that did not, on its face, permit development of a 498-unit MHC on plaintiffs' property." *Id.* at 528. Mich. Comp. Laws § 125.3207 states that:

> A zoning ordinance or zoning decision shall not have the effect of totally prohibiting the establishment of a land use within a local unit of government in the presence of a demonstrated need for that land use within either that local unit of government or the surrounding area within the state, unless a location within the local unit of government does not exist where the use may be appropriately located or the use is unlawful.

*Id.*[1] The plaintiffs argued that the township's zoning map "classified no appropriate land" for a manufactured housing community (MHC), that the township's master plan designated only unsuitable property for that use, and that the township's ordinance was therefore invalid. *Id.*

---

[1] The statute in effect at the time *Hendee* was decided similarly prevented a "'zoning ordinance or zoning decision' from 'hav[ing] the effect of totally prohibiting the establishment of a land use within a township in the presence of a demonstrated need for that land use within either the township or surrounding area within the state.'" 786 N.W.2d at 532 (quoting Mich. Comp. Laws § 125.297a).

5

at 524. The plaintiffs had not, however, sought a land use variance with the township prior to filing their lawsuit.

The Michigan Court of Appeals "implied that plaintiffs were free to pursue their exclusionary zoning claim because the ordinance unconstitutionally excluded a lawful use (MHC)." *Id.* at 526. The Michigan Supreme Court disagreed, holding that the plaintiffs were required to seek a final decision from the governing body before filing a complaint alleging exclusionary zoning claims. *Id.* at 531. The Court stated that "[p]recisely because the statute prevents a 'zoning ordinance or zoning decision' from 'hav[ing] the effect of totally prohibiting the establishment of a land use within a township *in the presence of a demonstrated need for that land use within either the township or surrounding area within the state*,' . . . the zoning authority must first be afforded the opportunities (1) to determine the effect of its ordinance in light of evidence demonstrating a need for the proposed land use and (2) to render a zoning decision based on that evidence before a facial exclusionary zoning claim can become ripe for judicial review." *Id.* at 532. The plaintiffs' failure to submit an application to rezone its property to permit an MHC "effectively denied the township any opportunity to consider whether that alternative use of the land would be acceptable" and, thus, the plaintiffs' "exclusionary zoning claim [was] not ripe for judicial review." *Id.* at 531.

The same is true in this case. Similar to *Hendee*, where the township's master plan "contemplate[d] MHC use," but only in areas that the plaintiffs alleged were unsuitable, *id.* at 531 n.26, the Grand Rapids Zoning Code allows for materials recovery, recycling,

6

wrecking and salvage, but only under certain conditions. Also similar to *Hendee*, Plaintiffs did not bring this matter before the zoning board and apply for a land use variance prior to filing their complaint. (*See* Pls.' Resp. to Mot to Dismiss 23, ECF No. 20 ("We do not claim he was denied a variance"); Schulz Aff. ¶ 11,[2] ECF No. 15-8 ("[U]pon review of departmental records, Plaintiffs . . . have never applied for a zoning use variance, or applied for rezoning and an SLU to allow for Materials Recovery, Recycling, Wrecking and Salvage uses at 639 Cherry.").) Thus, they have "deprived the township of any opportunity to consider whether its ordinance failed to accommodate a lawful use for which a demonstrated need existed," and their claim "is not ripe for judicial review." *Hendee*, 786 N.W.2d at 531.

While Plaintiffs contend that "there is a question of fact" as to whether the City's Zoning Code "relates to public health and safety when there is a demonstrated need" for the recycling activities that Plaintiffs wish to engage in, *Hendee* made clear that the "zoning authority must first be afforded the opportunities (1) to determine the effect of its ordinance in light of evidence demonstrating a need for the proposed land use and (2) to render a zoning decision based on that evidence[.]" *Id.* at 532. Plaintiffs have not provided the zoning authority with these opportunities. Accordingly, while Plaintiffs contend that "there is a question of fact," that question is not one for this Court, at least at this point in time.

---

[2] While this affidavit is not admissible for purposes of Defendants' Rule 12(b)(6) claims, the Court will consider it solely for the purpose of Defendants' Rule 12(b)(1) argument. *Ohio Nat'l Life Ins.*, 922 F.2d at 325.

**B. Takings Clause Claims**

Defendants also contend that, to the extent Plaintiffs allege that a regulatory taking occurred, this claim is not properly before the Court because Plaintiffs have failed to pursue the state-court remedies available to them. The Sixth Circuit has distinguished between "just compensation" takings claims and "due process" takings claims in federal zoning cases. *See Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1215-16 (6th Cir. 1992). Defendants' motion to dismiss seeks dismissal of just-compensation takings claims. The Court agrees that, to the extent Plaintiffs have raised a just-compensation takings claim, the claim must be dismissed for lack of subject matter jurisdiction.

The Fifth Amendment's Taking Clause does not prohibit the government from taking private property. Rather, it prohibits the government from taking private property without providing just compensation. *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). The Supreme Court has recognized that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195. The Sixth Circuit has recognized that Michigan provides an adequate just compensation procedure—inverse condemnation proceedings—for parties alleging that the government has wrongfully taken private property. *See Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 570-71 (6th Cir. 2008).

Plaintiffs' complaint does not allege that they have sought a remedy in state-court, but instead states that "Peterson had no opportunity or remedy to recover or replevin his goods, pending disposition by a court. Peterson was told his property would be taken to the dump." (Compl. ¶ 44(E).) The fact that Plaintiffs cannot recover the original property does not mean that no adequate state court remedy exists. *Cf. Hudson v. Palmer*, 468 U.S. 517, 535 (1984). Indeed, "Michigan courts have held that inverse condemnation is a remedy for a taking and that a 'taking of private property for public use is not restricted to cases involving absolute conversion of private property, but also includes cases where the value of property is destroyed by the action of the government[.]" *Macene v. MJW, Inc.*, 951 F.2d 700, 704 (6th Cir. 1991) (quoting *Blue Water Isles v. Dep't of Natural Resources*, 431 N.W.2d 53, 58 (Mich. Ct. App. 1988)).

Because Plaintiff has not alleged, much less demonstrated, that he first sought an adequate state-court remedy, he has not met his burden of proving that this Court possesses subject matter jurisdiction over a just-compensation takings claim.

## II. Rule 12(b)(6)

Defendants move to dismiss the remainder of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides that a party may assert "failure to state a claim upon which relief can be granted" as an affirmative defense. A Rule 12(b)(6) motion to dismiss requires the Court to "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the

plaintiff,'" but the Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court is more limited in the documents that it may consider when ruling on a Rule 12(b)(6) motion than it is under a Rule 12(b)(1) motion: it may consider the complaint, "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

While arguing that several of Plaintiffs' claims should be dismissed under Rule 12(b)(6), Defendants have attached and made reference to exhibits that fall outside of the scope of the materials that the Court may consider. For instance, to prove that "[t]here are numerous areas within the City where the Petersons' business could be conducted," Defendants have attached an exhibit of a highlighted zoning map created by the City of Grand Rapids (ECF No. 15-8). There is no indication that this is a public record, and Plaintiffs dispute that there are areas within the City where their business can be conducted.

Further, to prove that "notices were posted on the Petersons' door," Defendants have attached photographs taken by Carolyn Forsythe. (ECF No. 15-7.) And to prove that Plaintiffs never exercised their rights to a hearing of the violation that is at issue in this case, Plaintiffs have attached notices of a nuisance complaint, notice to abate, a nuisance work order between Pit Crew and the City, and other notices sent by the City to Defendant. (ECF Nos. 15-2, 15-3, 15-4.) Some of these documents, such as the nuisance work order, clearly may not be considered when deciding a Rule 12(b)(6) motion. Others, such as the notice to abate, may potentially be considered. It is not clear to the Court, however, whether the City stores these notices internally, or whether the notices are, as Defendants assert, public records.

In response to Defendants' motion, Plaintiffs also attached numerous exhibits. Included among these exhibits are an affidavit of William Peterson, affidavit of Patricia Peterson, affidavit of Nancy Wilson, numerous emails, letters sent from Preston Hopson to William Peterson, a letter sent from Heidi Herzog to William Peterson, notices of violations, and 21 letters of support for William Peterson's business from neighbors and customers. These documents also fall outside of the scope of the materials that the Court may consider.

The Court finds that several of the documents Defendants have attached are highly relevant and potentially dispositive of Plaintiffs' claims. Still, the Court cannot consider these documents without converting the motion to dismiss into a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c),

matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56."). Prior to treating a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

This opinion serves as notice that the Court will treat the claims Defendants have moved to dismiss under Rule 12(b)(6) as a motion for summary judgment under Rule 56. The Court will allow the parties 30 days to present all material pertinent to the claims that Defendants have moved to dismiss under Rule 12(b)(6).

An order will enter consistent with this opinion.


Dated: April 22, 2016                              /s/ Robert Holmes Bell
                                                   ROBERT HOLMES BELL
                                                   UNITED STATES DISTRICT JUDGE