UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM J. PETERSON,
PATRICIA PETERSON,

                 Plaintiffs,

                                         Case No. 1:15-cv-671

v.

                                         HON. ROBERT HOLMES BELL

CITY OF GRAND RAPIDS et al.,

                 Defendants.

_____/

## **O P I N I O N**

Plaintiffs William J. Peterson and Patricia Peterson bring this action alleging violations of their Fourth, Fifth, and Fourteenth Amendment rights, as well as violations of the Michigan Search Warrant Statute and Section 11 of the Michigan Constitution. Plaintiffs allege that Defendants City of Grand Rapids, its employees, Pit Crew, and Pit Crew's owner violated these rights when they "raided Plaintiffs' property and arbitrarily removed personal property," and "totally prohibit[ed] small scale recycling enterprises" from operating in the City, despite a demonstrated need. (2d Am. Compl. ¶ 1, ECF No. 13.)

In response to these allegations, Defendants filed a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (ECF No. 14.) On April 22, 2016, this Court issued an opinion granting

Defendants' motion under Rule 12(b)(1) and dismissing Plaintiffs' exclusionary zoning and just compensation takings claims. (Op., ECF No. 22.) The Court provided notice to the parties that it was treating Defendants' motion to dismiss Plaintiffs' remaining claims under Rule 12(b)(6) as a motion for summary judgment under Rule 56, and allowed the parties 30 days to supplement their motion or response with material pertinent to the claims. The parties have done so.

## I. Background

At all relevant times, Plaintiffs lived at 639 Cherry Street in Grand Rapids, Michigan. At this residence, Plaintiff William Peterson ran a "small-scale recycling" business. (*See* Inspection Photos, ECF No. 15-7.) Mr. Peterson had previously "conducted this activity at several locations in the City. He had been forced to move several times over the years by the actions or directions of [Defendant Eric] Jordan and other City employees." (2d Am. Compl. ¶ 7.) That is because the City's Zoning Code only allows such "small-scale recycling" to be conducted in certain locations. Those engaging in "materials recovery, recycling, wrecking and salvage" must do so on a site that is at least two acres in size, and "[a]ll machinery, equipment, buildings, structures and activities shall be located at least twenty-five (25) feet from any lot line, one hundred (100) feet from a residential Zone District, five hundred (500) feet from a residence, and three hundred (300) feet from any stream, water body or wetland." (Grand Rapids Zoning Code § 5.9.16, ECF No. 20-20.) Plaintiffs' residence did not meet these requirements.

2

As a result, Plaintiffs received notices that their property was in violation of several city ordinances. These notices mentioned a "[b]ackyard full of junk and miscellaneous items" in violation of the City's Nuisance Code (Notice, ECF No. 15-2), a barn with missing siding and a cement block garage roof cover that was not in good repair in violation of the City's Housing Code (Notice, ECF No. 15-4), and the fact that the property was being improperly used as a business or home occupation in violation of the City's Zoning Code (Notice, ECF No. 15-3).

On June 5, 2012, Plaintiffs filled out an appeal form contesting the violations. (ECF No. 15-4, PageID.148.) The form was "vague." (Herzog Email, ECF No. 20-18, PageID.340.) When William Peterson contacted Heidi Herzog of the City's Code Compliance Division to clarify which of the violations he would be arguing at his appeal, she informed him that she assumed he was appealing the Housing and Zoning violations, because "[t]he Nuisance cases (Vehicles, Trash, Grass, etc.) were not appealable at the time [he] filed because the appeal by date had expired." (*Id.* at PageID.340-41.)

On June 27, 2012, Defendant Carolyn Forsythe drafted an affidavit for an administrative search warrant. (ECF No. 15-5.) The affidavit sought to "enter the property with the City contractor, Pit Crew, [and] GRPD, to remove all discarded debris/materials, garbage, rubbish, auto parts, appliances/furniture, all unlicensed and/or inoperable vehicles from the property." (*Id.* at PageID.154.) The state magistrate judge signed the search warrant which authorized, in part, City officials to "remove all unlicensed or inoperable vehicles,

3

debris, garbage, rubbish, auto parts and appliances/furniture from the property." (*Id.* at PageID.160.) On June 28, 2012, Officer Shelly Weiss served the search warrant on Plaintiffs. (2d Am. Compl. ¶ 24.) The property that was allegedly in violation of the City's Nuisance Code was removed by Defendant Pit Crew. A nuisance work order filled out by Pit Crew indicated that the property was removed as a result of the Nuisance violation. (Nuisance Work Order, ECF No. 15-2, PageID.139.)

Plaintiffs subsequently filed a complaint in this Court on June 25, 2015, an amended complaint on September 16, 2015, and a second amended complaint on September 17.

## II. Standard of Review

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, a "plaintiff must do more than rely merely on the allegations of her pleadings or identify a 'metaphysical doubt' or hypothetical

'plausibility' based on a lack of evidence; [a plaintiff] is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits[.]'" *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586-87). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## II.

Following this Court's dismissal of Plaintiffs' exclusionary zoning and just-compensation takings claims, the following claims remain: (1) violation of Plaintiffs' substantive due process rights; (2) violation of Plaintiffs' procedural due process rights; (3) violation of Plaintiffs' Fourth Amendment rights and section 11 of the Michigan Constitution; and (4) violation of the Michigan Search Warrant Statute.

### A. Substantive Due Process

Defendants state that "a careful reading of the complaint leaves Defendants unsure as to whether the Petersons are attempting to assert a substantive due process claim," but that even if they are, the claim is still meritless. (Br. in Support of Mot. Summ. J. 11, ECF No. 15.) Plaintiffs' response brief clarifies that they have, in fact, raised a substantive due process claim.

Substantive due process claims alleging that government actions affect fundamental rights, or those rights "so rooted in the traditions and conscience of our people," *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012), are subject to strict scrutiny review. *Shoemaker v. City of Howell*, 795 F.3d 553, 564 (6th Cir. 2015). The Supreme Court has "identified very few fundamental rights." *Id.* These rights include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to terminate one's pregnancy, and possibly the right to refuse unwanted lifesaving medical treatment." *Seal v. Morgan*, 229 F.3d 567, 574-75 (6th Cir. 2000) The Sixth Circuit has cautioned against expanding that "brief list." *Shoemaker*, 795 F.3d at 566; *see also Seal*, 229 F.3d at 575 ("The Supreme Court has also recognized the uniquely destructive potential of overextending substantive due process protection.").While Plaintiffs argue that they have asserted a substantive due process claim, they have not identified any fundamental right that has been infringed upon.

When the government actions do not implicate fundamental rights, they will be upheld so long as they are rationally related to a legitimate state interest. *Shoemaker*, 795 F.3d at 564. Under this standard of review, "plaintiffs bear the heavy burden of 'negativ[ing] every conceivable basis which might support [the legislation], . . . whether or not the basis has a foundation in the record.'" *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000) (quoting *Heller v. Doe*, 409 U.S. 312, 320 (1993)) (alterations in original). Applying this standard, Plaintiff's claim that Grand Rapids City Code § 5.9.24 itself violates substantive due process

rights because it requires "people doing small materials repurposing businesses to have a minimum two (2) acre lot size," must fail. "The power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981); *see also Adams v. City of Marshall*, No. 4:05-cv-62, 2006 WL 3825250, at *3 (W.D. Mich. Dec. 27, 2006) ("It is entirely reasonable for a city to prescribe minimum property maintenance standards for purposes of health and safety and to maintain adjacent land values, as long as the identification of nuisances is based upon non-arbitrary standards."). Plaintiffs' unsupported argument that "there is a question of fact on whether [§ 5.9.24 of the zoning code] relates to the public health and safety" does not negative every conceivable basis which might support the legislation.

Because Plaintiffs have failed to either identify a fundamental right that was affected by the City's actions or demonstrate that the Zoning Code was not rationally related to the City's purpose of protecting the health and public safety, their substantive due process claim fails.

**B. Procedural Due Process**

Plaintiffs' complaint next contends that their procedural due process rights were violated. (2d Am. Compl. ¶ 43.) To raise a procedural due process claim, a plaintiff must first "demonstrat[e] that he possessed a protected property or liberty interest and was deprived of that interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005). Upon

making this showing, a plaintiff is generally entitled to "notice and an opportunity to be heard" prior to the deprivation. *Id.*; *see also Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976). The Court discerns two potential property interests asserted by Plaintiffs: an interest in rezoning the land to allow for small-scale recycling, and an interest in the recycling materials that were taken when the warrant was executed.

### 1. Property Interest in Rezoning the Land

To the extent that Plaintiffs assert a property interest in amending the City's Zoning Code to allow for the operation of a small-scale recycling business on their property, the claim is meritless. Property rights are defined by "independent sources such as state law and not by the Constitution." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008). "[I]n order to establish a property right in a future, rezoned land use, an individual 'must point to some policy, law, or mutually explicit understanding that both confers the benefit[] and limits the discretion of the City to rescind the benefit.'" *Id.* (quoting *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 435 (6th Cir. 2005)). Plaintiffs have not pointed to any policy, law, or understanding with the City of Grand Rapids that created a right to rezone their property to conduct small-scale recycling. Moreover, the City has considerable discretion to deny a request to rezone land. Accordingly, this claim will be denied.

### 2. Property Interest in Recycling Materials

Plaintiffs' complaint also alleges a procedural due process violation relating to the "recycling materials" that the City removed from the property. Plaintiffs contend that they

"had no notice of the raid nor an opportunity to be heard."[1] (2d Am. Compl. ¶ 24.) The parties' dispute centers, in large part, around which violation the property was abated pursuant to. A summary of Plaintiffs' violations, and the notices Plaintiffs received regarding those violations, is helpful:

### N-YRD-2012-449: The Nuisance Violation

On March 15, 2012, Plaintiffs received a "notice of nuisance complaint" in case number N-YRD-2012-449. (ECF No. 15-2, PageID.135.) This notice stated that the City had received a complaint regarding a "backyard full of junk and miscellaneous items," which "may be in violation of the City Code." (*Id.*) It did not specify which section of the City Code was potentially violated. It did not inform Plaintiffs of their right to an appeal. It did inform Plaintiffs that Carolyn Forsythe would be conducting an inspection within seven days covering "all apparent Nuisance Code violations," and that if the violations were still present upon inspection, a "Notice to Abate will be posted and a fee may be assessed." (*Id.*) The notice advised Plaintiffs to call Carolyn Forsythe if they had any questions.

On March 28, a notice to abate was issued. (ECF No. 15-2, PageID.136.) This notice informed Plaintiffs that conditions on their property were "in violation of the City Nuisance Code." (*Id.*) It stated that the Notice was "authorized by the Nuisance Code Chapter 151 of Title IX, Article 8, 9.108-9.115, concerning Nuisance violations not permitted in the City of

---

[1] Plaintiffs do not argue that the City's procedure for challenging ordinance violations is constitutionally deficient, nor do they mention *Mathews v. Eldridge*, 424 U.S. 319 (1976). Rather, their argument focuses on the fact that they were not provided with the opportunity to follow the City's procedures for challenging ordinance violations. That argument is what the Court will address.

Grand Rapids." (*Id.*) It did not inform Plaintiffs of their right to an appeal. It noted that Plaintiffs' property had "trash/rubbish/garbage," "auto parts/tires," "grass/weed higher than twelve (12) inches," "appliance(s)/indoor furniture," "roof/construction debris," and "stagnant water" outside. (*Id.*) It informed Plaintiffs that "if the conditions are still found to remain . . . this office may arrange to have a private contractor correct the violation(s)." (*Id.*) It also included the phone number of the City's Code Compliance Division, and Carolyn Forsythe's office phone number.

A nuisance work order indicates that Pit Crew, a contractor, arrived at Plaintiffs' home on May 18, 2012, to remove the items that were in violation of the City Code, but that Pit Crew was denied entrance by Plaintiffs. (ECF No. 15-2, PageID.137.) On May 25, 2012, Plaintiffs received a letter "warning of prosecution action." (*Id.* at PageID.138.) It noted that Plaintiffs would be required to appear in court within seven days if the violations were not corrected. (*Id.*)

On June 29, 2012, after an administrative search warrant had been signed by the state magistrate judge, a nuisance work order was issued for case number N-YRD-2012-449, and Pit Crew removed the property that was found to be in violation. (*Id.* at PageID.139.)

### H-ENF-2012-725: The Housing Violation

On March 28, 2012, Plaintiffs received a "notice of housing complaint" in case number H-ENF-2012-725. (ECF No. 15-4, PageID.145.) The notice informed Plaintiffs that the City had received a complaint that "Barn has missing siding, cement block garage roof

cover is not in good repair." (*Id.*) It noted that these conditions "may be in violation of the City Code," but did not state which section of the City Code. It did not inform Plaintiffs of a right to appeal. It did inform Plaintiffs that an inspection would occur "approximately 21 days from the date of this notice." (*Id.*)

On May 15, 2012, Plaintiffs received a "notice of violation" in this case. It stated: "You may appeal any part of this notice to the Housing Board of Appeals by filling out the enclosed Claim of Appeal Form. You may also appeal for more time to make repairs. Your appeal must be filed at the Housing Inspections Office" by June 4, 2012. (*Id.* at PageID.146, 147.) The notice stated the specific sections of the Housing Code that were violated (sections 8.674, 8.673, and 8.687). (*Id.* at PageID.147.) On June 5, 2012, the City received an appeal form from Plaintiffs. The form indicated that Plaintiffs were appealing a violation that they received notification of on May 15, 2012, and that the date of the inspection on that notice was May 11, 2012. (*Id.* at PageID.148.) These dates correspond with the notice of violation in this case number, H-ENF-2012-725. (*See id.* at PageID.147.) They do not correspond with the dates that Plaintiffs received notice of the Nuisance Code violation. The City's "appeal approval form" noted that Plaintiffs filed an appeal in "Unique # H-ENF-2012-725." (*Id.* at PageID.149.) An appeal hearing was scheduled for July 11, 2012. (*Id.* at PageID.150.) Plaintiffs' appeal was denied.

11

**H-ZONE-2012-68: The Zoning Violation**

On May 15, 2012, Plaintiffs received a "notice of zoning violation" in case number H-ZONE-2012-68. (ECF No. 15-3, PageID.141.) The notice stated that Plaintiffs were found to have two violations of Section 5.9.13 of the City's Zoning Code: Plaintiffs were improperly using their property as a business or home occupation, and trailers and trailer parts were being stored on the property. (*Id.* at PageID.142.) The notice stated that "in some cases, an appeal to the Board of Zoning Appeals is possible. You may contact me to obtain further information and an appeal form." (*Id.* at PageID.141.) It further stated that "[p]er the Zoning Code, if the owner or responsible person fails to abate the violation, the City may take action to abate the violation." (*Id.*) On August 16, 2012, Plaintiffs received a letter from Carolyn Forsythe stating that she had been assigned to the case, and that Plaintiffs needed to contact her to discuss the case. (*Id.* at PageID.143.)

**The City's Nuisance Code**

As stated above, the Nuisance Work Order indicates that the warrant was issued to abate violations of the Nuisance Code. Moreover, the Administrative Search Warrant authorized the removal of the items of property that were identified as violating the Nuisance Code. The City's Nuisance Code contains several provisions relevant to this case.

Section 9.5 of Nuisance Code Chapter 151 is titled: "Appeals; Hearing." (Nuisance Code § 9.5, ECF No. 15-11, PageID.250.) It states that "an appeal shall be filed within twenty (20) days of the date of any notice, order, ruling or action being appealed . . . Upon

the filing of an appeal as provided for in this Chapter, compliance with the notice, billing or order shall be stayed until the matter is heard and decided by the Housing Appeal Board except as otherwise provided in this Chapter." (*Id.*) Section 9.109 gives the City authority to abate property maintenance nuisances, providing:

> Upon observing a violation of this Article, the City may issue a Notice to Abate, as provided for in Section 9.111, and take such other action or actions as is provided for in this Article to abate the public nuisance. These actions may include any of the administrative Code enforcement, abatement-related or abatement actions provided for in Section 9.113. These actions may include, but shall not be limited to, abatement of the public nuisance by a City contractor or vendor or other means determined by the City as provided for in Section 9.112.

(*Id.* § 9.109, ECF No. 15-11, PageID.258.) Section 9.112 states:

> Upon failure of a property owner to abate a violation as ordered in a Notice to Abate, the City may abate the nuisance. This abatement may be performed by the City, by a contract vendor, or by other means determined by the City.

(*Id.* § 9.112, ECF No. 15-11, PageID.259.)

**Plaintiffs received notice and an opportunity to be heard, but failed to take advantage of the procedures.**

Plaintiffs' procedural due process argument contends that "municipal messages . . . confused [William] Peterson." (Resp. to Mot. Summ. J. 3.) Plaintiffs also appear to argue that they attempted to exercise their right to a hearing, but prior to attending the hearing, their property was seized. Plaintiffs state that "[n]otice is a fact question," and argue that issues of fact exist that preclude this Court from granting summary judgment. (*Id.* at 6.) In doing

13

so, Plaintiffs cite case law supporting the basic proposition that due process requires notice and an opportunity to be heard.

The problem for Plaintiffs, however, is that they did receive constitutionally-adequate notice and an opportunity to be heard, but failed to take advantage of these procedures. To "satisfy due process under the Constitution, the notice must be 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,' and must afford a reasonable time for those interested parties to make their appearance.'" *Shoemaker*, 795 F.3d at 560 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). As *Shoemaker* illustrates, the notice does not have to be perfect; all that is required is that "the notice as given be reasonably calculated to alert [a plaintiff] of the charges against him and any avenues available for challenging those charges." *Id.*

In *Shoemaker*, the plaintiff was notified of ordinance violations "over the course of 16 months," and on "at least six separate occasions." *Id.* The warnings "included four door-hanger notices, three Notification of Ordinance Violation letters, a conversation with [the plaintiff's] daughter, and a telephone conversation between [a city official] and [the plaintiff] himself." *Id.* The plaintiff knew that he was being charged with violating the ordinance, but argued that he received deficient notice "about the ways in which he could challenge those charges." *Id.* Although the notices the plaintiff received did not comply with the City Code's requirements, the Sixth Circuit found that "such a failure 'does not . . . automatically translate

14

into a deprivation of procedural due process under the United States Constitution.'" *Id.*

(quoting *DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999)). The court

concluded that the information described below satisfied procedural due process concerns:

> [The plaintiff] was clearly aware that the City considered him to be in violation
> of the Ordinance. The mailed notices of violation and the door-hanger notices
> informed him of the nature of the alleged violation and the relevant section of
> the City Code. These notices also included the phone number of City Hall.
> Finally, the notices refer to the City's Municipal Civil Infraction Ordinance,
> where [the plaintiff] could have learned about the procedures for objecting to
> the allegations against him. A simple investigation of the referred-to
> Ordinances or a call to City Hall would have answered Shoemaker's questions,
> but he made no such effort. He "should not be able to now use [his] inaction
> against the [City] in claiming a violation of due process." *See Dubuc v. Twp.
> of Green Oak*, 406 F. App'x 983, 989 (6th Cir. 2011) (holding that property
> owners who failed to take advantage of the zoning board's postdeprivation
> appeals procedures could not claim that those procedures violated due process)
> (citing *Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004)).

*Id.*

Here, as in *Shoemaker*, there is no dispute that Plaintiffs were aware that the City

considered them to be in violation of the City's Nuisance Code in case number N-YRD-

2012-449. They received a notice of nuisance complaint on March 15, 2012 regarding a

"backyard full of junk and miscellaneous items." They received a notice to abate on March

28, informing them that they were in violation of the City Code—specifically, "Nuisance

Code Chapter 151 of Title IX, Article 8, 9.108-9.115." If these warnings did not make

Plaintiffs aware that the City considered them to be in violation of the Code, Plaintiffs were

certainly aware when Pit Crew arrived at their door—and was denied entry—on May 18.

Also as in *Shoemaker*, the notice included the phone number of the City's Code Compliance Division.

And again, as in *Shoemaker*, the notices of violation informed Plaintiffs of "the nature of the alleged violation and the relevant section of the City Code," where Plaintiffs "could have learned about the procedures for objecting to the allegations against them." The notices referenced the backyard full of junk and miscellaneous items—specifically, "trash/rubbish/garbage," "auto parts/tires," "grass/weed higher than twelve (12) inches," "appliance(s)/indoor furniture," "roof/construction debris," and "stagnant water" outside—and mentioned that the notice was issued pursuant to "Nuisance Code Chapter 151 of Title IX, Article 8, 9.108-9.115," concerning "property maintenance nuisances."

The Court, therefore, finds that as in *Shoemaker*:

> A simple investigation of the referred-to Ordinances or a call to City Hall would have answered [Plaintiff's] questions, but [they] made no such effort. [They] "should not be able to now use [their] inaction against the [City] in claiming a violation of due process."

*Id.* (citation omitted); *Cf. City of West Covina v. Perkins*, 525 U.S. 234, 242 (1999) ("[N]otice of [post-deprivation] procedures for protecting one's property interests may be required when those procedures are arcane and are not set forth in documents accessible to the public, [but there is no] general rule that notice of remedies and procedures is required.").

Plaintiffs do not attempt to distinguish the notice given in this case from that in *Shoemaker*. Rather, they argue that the City set out to confuse them, and that while William Peterson attempted to "work within the system" and filed an appeal, the City raided the

16

property before they could actually be heard. But this argument is flawed. The record demonstrates that Plaintiffs' property was seized as a result of the violation of the Nuisance Code violation set forth in case number N-YRD-2012-449. (*See* Nuisance Work Order.) The record also demonstrates that Plaintiffs never filed an appeal of the Nuisance Code violations. Plaintiffs' appeal form indicated that they were appealing a violation that they received notice of on May 15, 2012; Plaintiffs received notice of the Nuisance Code violation in March 2012. Moreover, before their property was seized, Plaintiffs were made aware that the Nuisance Code Violation was no longer appealable "because the appeal by date had expired." (*See* Herzog Email.) Plaintiffs received adequate notice of the Nuisance Code violation, an adequate amount of time to correct the violation, and an adequate amount of time to appeal the case, but they did not do so. The City's Nuisance Code authorizes the City to, either itself or through a contract vendor, abate the nuisance if the violating party fails to do so. That is what occurred.

In summary, the Court finds that the notice of the Nuisance Code violation that Plaintiffs received, which was similar in content to the notice given in *Shoemaker*, satisfied procedural due process concerns. Plaintiffs failed to take advantage of the available procedures, and "cannot create a due process claim by ignoring established procedures. 'The availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure.'" *Santana*, 359 F.3d at 1244 (citing *Dusanek v. Hannon*, 677 F.2d

17

538, 542-43 (7th Cir. 1982)). The fact that Plaintiffs had an appeal pending for unrelated violations does not change the fact that the City was authorized to abate the Nuisance Code violation after Plaintiffs failed to file an appeal in that matter or to abate the nuisance themselves. Accordingly, the Court finds this claim to be meritless.

## C. Michigan Search Warrants Act

Plaintiffs' complaint alleges that the City of Grand Rapids and its employees violated several provisions of the Michigan Search Warrants Statute, Mich. Comp. Laws § 780.651, while executing the administrative search warrant. (Compl. ¶¶ 39-42.) But it appears that this statute is inapplicable because it governs the issuance of search warrants in criminal cases. *See* Mich. Comp. Laws § 780.651(1) ("When an affidavit is made on oath to a judge or district court magistrate authorized to issue warrants in *criminal* cases . . . ."); *Balsa U.S.A., Inc. v. Austin*, 60 F. Supp. 2d 723, 729 (W.D. Mich. 1999). This was a civil matter.

Regardless, violation of a state law does not establish a claim under 42 U.S.C. § 1983. "Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate." *Lewellen v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 34 F.3d 345, 347 (6th Cir. 1994). Although the State of Michigan is able to "enact laws that are more protective of individual rights than the United States Constitution, a mere violation of such a state law will not establish a proper claim under § 1983." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citation omitted).

18

Because, as stated below, the Court finds that Plaintiffs have failed to raise viable federal claims against these Defendants, the Court declines to exercise supplemental jurisdiction over this state law claim. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) ("[P]endent jurisdiction 'is a doctrine of discretion, not of plaintiff's right,' and . . . district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons.'") (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Accordingly, for purposes of this case, the proper standard for evaluating the warrant and alleged seizure of property is found in federal case law interpreting the Fourth Amendment, discussed in the next section.

## D. Fourth Amendment Violations[2]

Plaintiffs contend that Defendants' actions of illegally obtaining a search warrant and removing property from their residence violated the Fourth and Fourteenth Amendments. (2d Am. Compl. ¶ 1.) Although unclear from the complaint, it appears that Plaintiffs raise these claims against Defendants Forsythe, Jordan, and Shelly Weiss, and that they have identified four potential Fourth Amendment violations. First, they state that the search warrant affidavit "contained false representations which Carolyn Forsythe and Eric Jordan knew were untrue," namely, that the "Petersons' property which they intended to seize was not hidden or

---

[2] "Michigan's constitutional prohibition against unreasonable searches and seizures 'is to be construed to provide the same protection as that secured by the Fourth Amendment [of the federal constitution],' absent 'compelling reason' to impose a different interpretation." *People v. Custer*, 630 N.W.2d 870, 876 n.2 (Mich. 2001) (quoting *People v. Collins*, 475 N.W.2d 684, 691 (Mich. 1991)); *see also People v. Gingrich*, 862 N.W.2d 432, 435 n.2 (Mich. Ct. App. 2014) ("The Michigan Constitution's prohibition against unreasonable searches and seizures is construed as protecting the same interests as the Fourth Amendment of the United States Constitution."). Plaintiffs have articulated no reason why their claims under the Michigan Constitution, which are not clearly spelled out, should be entitled to greater protections than their claims under the Fourth Amendment. Accordingly, the two claims will be discussed together.

concealed but out in his yard," and that Forsythe and Jordan "knew, or should have known, that the Search Warrant Statute did not permit clearing of 'nuisances.'" (*Id.* ¶ 17.) Second, Plaintiffs state that no warrant should have issued because "there was no underlying criminal case" pending against Plaintiffs at the time the City applied for the warrant. (*Id.* ¶ 20.) Third, Plaintiffs contend that Defendant Shelly Weiss "knowingly served a defective search warrant." (*Id.* ¶ 52.) And fourth, Plaintiffs note that a truck that was taken from his yard "was not identified in the application for the search warrant as one of the elements to be seized."[3] (*Id.* ¶ 27.)

Defendants Forsythe, Jordan, and Weiss argue that they are entitled to qualified immunity as to these claims. The Court will address each possible Fourth Amendment violation in turn.

**False Statement in Warrant Application**

Plaintiffs are not entitled to relief against Defendants Forsythe or Jordan under 42 U.S.C. § 1983 based on their claim that the search warrant affidavit contained known false statements. "An investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause[.]" *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (citing *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999)). But to prove a Fourth Amendment violation, Plaintiffs must "establish: (1) a substantial showing that the defendant stated a deliberate falsehood or

---

[3] Plaintiff's allegation that "all or some" of his property was "stolen by the contractor" will not be addressed in this opinion, as Defendant Pit Crew is not a party to this motion.

showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Id.* That is, they "must show that the judge would not have issued the warrant without the allegedly false material." *Id.*

Plaintiffs have failed to make such a showing. For purposes of an administrative search warrant, "[p]robable cause in the criminal law sense is not required." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320 (1978). Instead, "probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].'" *Id.* (quoting *Camara v. Mun. Court*, 387 U.S. 523, 538 (1967)). "When a warrant application is grounded upon specific evidence of violations, 'there must be some plausible basis for believing that a violation is likely to be found. The facts offered must be sufficient to warrant further investigation or testing.'" *Balsa,* 60 F. Supp. 2d at 730 (quoting *Marshall v. Horn Seed Co.*, 647 F.2d 96, 102 (10th Cir. 1981)).

The affidavit for the administrative search warrant in this case indicated that "the reason for the above inspection" is based on Mich. Comp. Laws 125.526, Section 8.510 of the City Housing Code, Chapter 140 of Title VIII of the City Code of the City of Grand Rapids, and on "Section 9.107 through 9.115 entitled 'Abatement of Nuisances' (Chapter 151 of Title IX of the City Code of the City of Grand Rapids)." (Aff. for Search Warrant, ECF No. 15-5, PageID.155.) It mentioned that Plaintiff had "four open cases" for various

21

violations, and described in detail the facts that led to the violations. (*Id.* at PageID.156-57.) It noted that follow up inspections showed "no compliance on any of the four cases." (*Id.*) The affidavit sought "the issuance of a Search Warrant to make an inspection to determine the condition of the described premises in order to perform the duty of safeguarding the health and safety of the Occupants and/or of the general public in accordance with the assigned duties prescribed by the Code of the City of Grand Rapids and the Statutes of the State of Michigan." (*Id.* at PageID.158.)

The details described in the administrative search warrant affidavit were based on specific evidence of existing violations and there was a plausible basis for believing that a violation would be found. Plaintiffs have not shown that the allegedly false or omitted information was material to the finding of probable cause. Even assuming that Defendants falsely stated that Plaintiffs' property "was not hidden or concealed but out in [Plaintiffs'] yard" (2d Am. Compl. ¶ 17), the affidavit contained enough detail to provide probable cause for an administrative search warrant. Accordingly, this claim is meritless.

**Pending Criminal Cases**

Plaintiffs next argue that the warrant should not have issued because there was no criminal case pending in this matter. Plaintiffs have cited no case law, nor is the Court aware of any, that requires that a criminal case be pending prior to the issuance of an administrative warrant. As mentioned, the probable cause needed for issuance may "be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative

22

or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].'" *Marshall*, 436 U.S. at 320 (quoting *Camara*, 387 U.S. at 538). Thus, this claim is meritless as well.

### Defective Search Warrant

Plaintiffs state that Shelly Weiss knowingly served a search warrant that did not comply with the Michigan Search Warrant Statute. Again, violation of a state law does not establish a claim under 42 U.S.C. § 1983, and the Court declines to exercise supplemental jurisdiction over the state law claim.

### Seized Truck

Lastly, Plaintiff notes that a truck that was taken from his yard "was not identified in the application for the search warrant as one of the elements to be seized." (*Id.* ¶ 27.) The Court disagrees. The warrant authorized the seizure of "unlicensed or inoperable vehicles." (ECF No. 15-5, PageID.160.)

Because Plaintiffs have failed to show a Fourth Amendment violation, the individual Defendants are entitled to summary judgment, and the Court need not reach Defendants' qualified immunity defense. *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007) ("If there is no constitutional violation, then the plaintiff's § 1983 claim fails as a matter of law and the defendant is therefore entitled to summary judgment and does not need qualified immunity.").

## E. Municipal Liability

Plaintiffs next contend that the "City had a standing policy of using search warrants obtained under the Michigan Search Warrant Statute . . . to raid and remove property from citizens' real estate personal [sic] for disposal." (2d Am. Compl. ¶ 13.) This claim fails because Plaintiffs have not shown any underlying constitutional violation. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.").

## G. Additional Discovery

Lastly, Plaintiffs' supplemental brief states that "the Court would err to find the plaintiffs' [sic] unable to establish a claim without considering the results of discovery as yet undone." (Pls.' Supplemental Br. 2, ECF No. 24.) The brief notes several additional facts Plaintiffs believe should be uncovered.[4] Although Plaintiffs did not file an affidavit

---

[4] *See, e.g.*: "We should discover what City Attorney Preston Hopson intended when he told Peterson that the matter had been referred to him by Code Compliance Supervisor Eric Jordan to file a civil infraction in District Court. And, why he later refused to speak to Peterson?" (Pls.' Supplemental Br. at 4); "Why did Carolyn Forsythe tell Peterson to talk to Preston Hopson not to her because it was in the City Attorney's hands? What is the effect on constitutional notice?" (*Id.*); "How the City of Grand Rapids and the individual defendants conducted themselves to create confusion is a question of fact." (*Id.* at 5; "Why Grand Rapids officials used the search warrant for civil purposes not a search and why they did not follow the statute for accounting and retaining property seized are questions of fact." (*Id.* at 7); "A question of fact lies whether Magistrate Hartley would have issued a warrant if he had been told the complete truth about what the Grand Rapids employees were doing. Would he have told Ms. Forsythe to issue the civil infraction or wait for the Housing Appeal Board?" (*Id.* at 14); "A reasonable discovery inquiry would be why the City housing people call this kind of raid an 'inspection'? Is it to mislead the court when they get a criminal search warrant?" (*Id.*) In summary, Plaintiffs state that the following questions of fact exist:

> A) Was the City's regular practice to execute search warrants by taking a citizen's property to the dump? If the City chose the Search Warrant Act would they have to comply with it? Did they mislead Peterson into believing this was a valid search warrant? Why did the City employees remove property
>
> (continued...)

requesting the need for discovery under Federal Rule of Civil Procedure 56(f), following

Sixth Circuit guidance, the Court will consider this statement in the supplemental brief as

such a request. *See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d

619, 628 (6th Cir. 2002) (cautioning against putting "form over substance" in situations such

as this).

Generally, "it is an abuse of discretion to deny a Rule 56(f) motion in the absence of

*any* opportunity for discovery." *CenTra, Inc. v. Estrin*, 538 F.2d 402, 420-21 (6th Cir. 2008)

(emphasis in original). But there are exceptions to this general rule, including when "'further

discovery would not have changed the legal and factual deficiencies.'" *Id.* (quoting *Maki v.

Laakko*, 88 F.3d 361, 367 (6th Cir. 1989)); *see also Ball v. Union Carbide Corp.*, 385 F.3d

713, 720-21 (6th Cir. 2004) (no abuse of discretion when discovery requested is "irrelevant"

---

(...continued)

to the dump when the search warrant statute provides what is seized under a warrant is to be accounted for and held? Why did the City refuse to provide information about the search warrant to Peterson after the raid? Why was there no public record of the search warrant or the removal of Peterson's property available? Was it because they knew it was invalid and that they mislead him to deprive him of due process

B) Why did Preston Hopson tell Peterson that the next step was a 61st District Court proceeding when he may have had no intention of taking Peterson to court even after Peterson asked him to give him a court hearing? Who influenced Mr. Hopson then to refuse to see or take calls from Peterson? We might also ask Mr. Hopson why he used Mr. Peterson's service several times after this? Why did Carolyn Forsythe tell Peterson it was in the hands of the City Attorney after Mr. Hopson refused to talk to him?

C) Did the City employees have an arrangement with Pit Stop or others by which the contractor was permitted to retain property in the course of removal? What happened to Peterson's property after the raid? Did all of it go to the dump, in fact? Was some of it retained or disposed of by the participants in the removal?

D)What did Officer Shelly Weiss' [sic] understand to be her duties as the principle peace officer charged with enforcement of the Search Warrant at Petersons'? Who instructed her and how? Why did she and the City not follow the Act's requirements?

(*Id.* at 20-21.)

to the issues necessary to decide case). That is the case here. Plaintiffs have raised numerous alleged questions of fact that remain and that they argue should be answered through discovery. *See* n.4. But these questions have no bearing on the key issues in this case: namely, whether due process rights and the Fourth Amendment were violated.

The   record before the Court–which includes the notice that Plaintiffs actually received and the affidavit that supported the administrative warrant–is sufficient to answer the legal and factual issues in this matter. While Plaintiffs may wish to ask more questions, the answers to those questions would not impact the Court's decision. Accordingly, the Court finds discovery in this matter to be unnecessary.

## III.

For the reasons stated above, Defendants' motion to dismiss, which the Court has converted to a motion for summary judgment, will be granted. An order and will enter consistent with this opinion.

Dated: <u>August 4, 2016</u>                                    <u>/s/ Robert Holmes Bell                    </u>
                                                                      ROBERT HOLMES BELL
                                                                      UNITED STATES DISTRICT JUDGE